# Supreme Court of Texas

No. 21-1032

JDH Pacific, Inc.,

*Petitioner*,

v.

Precision-Hayes International, Inc.,

*Respondent*

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

JUSTICE YOUNG, concurring in the denial of the petition for review.

PHI sued JDH for breach of contract in state court. JDH removed the case to federal court and successfully moved to compel arbitration. Following that win, JDH returned to state court and applied for writs of garnishment against PHI's bank, apparently to facilitate its claim for attorney's fees in having to compel arbitration. JDH attempted to do this, it says, through "a new and independent action." PHI contends that multiple defects doom JDH's effort, but the only one at issue here is a problem of potentially jurisdictional import: that JDH filed its *new*

1

application under the *old* case number from PHI's previously removed action. As the court of appeals observed, "[i]t is undisputed that the case has not been remanded to state court." 2021 WL 2656774, at *1 (Tex. App.—Houston [14th Dist.] June 29, 2021).

State courts, of course, cannot act in cases that have been removed and not remanded. The court of appeals concluded that the district court's orders granting JDH's requested writs of garnishment were therefore "void for want of jurisdiction." *Id.* (internal quotations omitted). The court of appeals then "dismiss[ed] this appeal for lack of jurisdiction." *Id.* JDH has sought our review of that jurisdictional determination.

The court of appeals' conclusion would be unremarkable but for the possibility that JDH's use of the old case number was merely a docketing error, not an attempt to litigate a case where jurisdiction was lacking. In other words, under one view of the case, an inadvertent technical mistake—essentially a typo—caused the lower court to elevate form over substance. For the moment, I will assume that characterization to be accurate.

For much of our history, such errors—even far less consequential errors—could cause the complete demise of a party's legal position. In the English common-law system on which much of our Texas legal tradition rests, the slightest pleading defect could prove fatal. "The possibilities of technical failure were legion," Sir John Baker, *An Introduction to English Legal History* 110 (5th ed. 2019), and the nuances of procedure "sheltered the bar inside a shroud of arcana," Geoffrey C. Hazard, Jr., et al., *Pleading and Procedure* 25 (9th ed. 2005).

2

An otherwise meritorious claim might be lost forever simply because of minor procedural mishaps, which justifies the view that both "[c]are and courage" were required to master the "science of pleading." Theodore F.T. Plucknett, *A Concise History of the Common Law* 399 (1956).

This sharp axe could fell even the stoutest oaks of the bar. Sir Edward Coke—one of the most storied lawyers and judges of the common-law tradition—learned this lesson early on. In defending a vicar from a claim brought by a nobleman,[1] Coke's "plea was immediately thrown out of court as 'insufficient,'" which seemed destined to lead to the vicar's total ruin. Catherine Drinker Bowen, *The Lion and the Throne: The Life and Times of Sir Edward Coke* 70 (1956). But Coke salvaged the vicar's case (and Coke's own reputation) by fighting fire with fire. He continued "brooding over" his opponent's opening filing—what we today might call the original petition or complaint—and "discovered a mistake . . . —only one word, but it sufficed." *Id.*[2] "The move proved instantly successful and the case was

_____

[1] The vicar had tried to stop unlicensed Puritan preachers from taking the pulpit one Sunday. Lord Henry Cromwell (the beheaded Thomas Cromwell's grandson), a Puritan who had invited them, insulted the vicar thus: "Thou art a false varlet and I like not of thee!" The vicar's response led to the litigation: "It is no marvel that you like not of me, for you like of those that maintain sedition against the Queen!" Catherine Drinker Bowen, *The Lion and the Throne: The Life and Times of Sir Edward Coke* 70 (1956).

[2] The mistake is almost too arcane to believe. The statute on which Lord Cromwell had sued, *Scandalum Magnatum*, first passed in 1378, had been "translated from Latin into law French, then into English. Cromwell's lawyer, instead of referring to the original statute, had been content with a third-hand English version that rendered the French word *messoinges* (lies) as 'messages.' Translating this back into Latin, Coke's opponent wrote *nuncia* (Latin for *messages*), 'whereas,' Coke told the court triumphantly, 'it should have been *mendacia* [lies]!'" *Id.* at 70–71.

thrown out of court." *Id.* at 71. As Coke's biographer dryly commented, "[i]n Coke's day, formality still ruled the courts. There were scores of formulae and rules, almost like magic passwords, which a lawyer must know if he wished to keep his case in court . . . ." *Id.* at 540.

Reliance on such incantations was never as absolute in colonial America or Texas. Colonial civil procedure, at least "compared to what went on in the royal English courts, . . . was loose, boneless, [and] easygoing." Lawrence M. Friedman, *A History of American Law* 24 (4th ed. 2019). And when the Texas Congress adopted "The Common Law of England" in 1840, it "expressly stipulated that [this adoption] 'shall not be construed to adopt the common law system of pleading.'" Ford W. Hall, *An Account of the Adoption of the Common Law by Texas*, 28 Tex. L. Rev. 801, 808–09 (1950).

That comparative easing of the technical rules, however, did not eliminate them. Barely four decades ago, one of the most prominent former members of this Court described "Texas appellate practice" at the time as still "mired in the nineteenth century's *in terrorem* philosophy, which has often caused harsh dispositions without regard to the merits of the cause." Jack Pope & Steve McConnico, *Practicing Law with the 1981 Texas Rules*, 32 Baylor L. Rev. 457, 492 (1980). Justice— soon to be Chief Justice—Pope celebrated the changes that increasingly aligned our judicial system's output more with merit and less with accident.

Over the ensuing decades, this Court has eliminated many traps for the unwary. "[W]e have instructed the courts of appeals to construe the [rules] reasonably, yet liberally, so that the right to appeal is not lost

4

by imposing requirements not absolutely necessary to effect the purpose of a rule." *Verburgt v. Dorner*, 959 S.W.2d 615, 616–17 (Tex. 1997). "Texas law greatly favors resolving litigation on the merits rather than on procedural technicalities." *Mitschke v. Borromeo*, 645 S.W.3d 251, 260 (Tex. 2022). And Texas courts are not "constrained by the form or caption of a pleading." *Surgitek v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999).

In short, the age in which mere docketing errors carry fatal jurisdictional consequences has come to an end. *See, e.g.*, *Mitschke*, 645 S.W.3d at 261–63 (concluding that even a misdocketed *notice of appeal* did not deprive the courts of jurisdiction). Indeed, more than half a century ago, when we were far more willing to impose serious consequences on filing errors, we specifically held that, at least in certain circumstances, petitions could still "invoke the jurisdiction of the district court," despite being improperly docketed in various ways. *Leach v. Brown*, 292 S.W.2d 329, 331 (Tex. 1956) (internal quotation omitted).

So if JDH's applications for writs of garnishment *were* merely misfiled in a wrong or unavailable docket number, such a docketing error would not alone defeat jurisdiction. JDH contends that it "initiated an entirely new and separate ancillary garnishment proceeding" that should have received "a new [docket] number" or at least had "a 'G' extension" added to the old one. JDH lays the blame on all of this at the feet of the clerk; PHI defends the clerk's honor by pointing out that "JDH, not the district clerk, filed the garnishment papers with the case number of the removed action."

5

Whoever is right, I fail to see how the outcome of that dispute matters. In *Mitschke*, it was counsel for petitioner who misfiled the relevant motion in an incorrect docket number, but we held that such a filing error would not defeat jurisdiction (at least absent bad faith and prejudice, which were not shown, *see* 645 S.W.3d at 262 n.20, 263 & n.21). As *amicus curiae* Robert B. Gilbreath suggests, the court of appeals' decision may "create confusion regarding subject matter jurisdiction" given the Court's precedents that decline to impart jurisdictional consequences to technical defects *regardless* of which party occasioned the error. I agree that the brief decision below suggests that subject-matter jurisdiction turns exclusively on the formalistic question of docketing, and the lower courts should not follow such a mistaken path in future cases.

I nonetheless concur in the denial of the petition for review. The procedural complexity of this case is distinct from typical examples of mere error. JDH did not simply file a lawsuit under a mistaken docket number; it filed a "writ of garnishment" that is linked up to the same subject matter as the prior lawsuit *in federal court* and a (presumably still pending) *arbitration*, which JDH itself wanted.

Beyond all that, I do not perceive any irremediable harm to JDH, even if we indulge the assumption that the only thing amiss was the docket number. After all, if the court of appeals' decision turns on nothing other than a mistaken view of subject-matter jurisdiction, then the dismissal cannot have been with prejudice. JDH does not assert that its "new and independent action" was dismissed with prejudice and neither does the court of appeals. So if JDH's only obstacle was its

6

mistaken filing in an unavailable docket number, JDH presumably can respond by refiling in an unmistakably *new* docket number. JDH has not suggested that it could not do so or indicated any practical impediment to doing so. If JDH filed an action that does not have the same docket-number problem, then the parties and lower courts would be free to address whether that "new" action genuinely is new or not (and anything else that the parties might raise in ordinary litigation unburdened by a docketing dispute).

All these considerations make this case an unsuitable vehicle for adding further clarity to our law. And perhaps no future case will require us to revisit the question about whether technical mistakes (as opposed to, for example, blowing past a jurisdictional time limit for filing a notice of appeal, *see Mitschke*, 645 S.W.3d at 260) can defeat subject-matter jurisdiction. But there may come another case in which a jurisdictional mistake *does* prejudice a litigant and in which the underlying dispute is *not* bound up in a morass like this one. In such a case, as my comments in this opinion reflect, I would vote to grant the petition for review. This is not such a case and I therefore concur in the denial of review.

_____
Evan A. Young
Justice

**OPINION FILED:** October 28, 2022

7